UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
No. 3:24-cv-00850

| | |
|---|---|
| CENTENE MANAGEMENT COMPANY LLC and CLAYCO, INC., <br><br> Plaintiffs, <br><br> v. <br><br> LANDDESIGN, INC. and ECS SOUTHEAST, LLC f/k/a ECS SOUTHEAST, LLP, <br><br> Defendants. | **COMPLAINT** |

Plaintiffs Centene Management Company LLC and Clayco, Inc., by and through their undersigned counsel, complaining of Defendants LandDesign, Inc. and ECS Southeast, LLC f/k/a ECS Southeast, LLP, hereby allege as follows:

**PARTIES**

1. Plaintiff Clayco, Inc. ("Clayco") is a corporate entity incorporated and existing under the laws of the State of Missouri, with a principal place of business located in St. Louis, Missouri.

2. Plaintiff Centene Management Company LLC ("Centene") is a limited liability company organized and existing under the laws of the State of Wisconsin, with a principal place of business located in St. Louis, Missouri. Centene's sole member is Centene Corporation, a corporate entity incorporated and existing under the laws of the State of Delaware, with a principal place of business located in St. Louis, Missouri.

3. Upon information and belief, Defendant LandDesign, Inc. ("LandDesign") is a corporate entity incorporated and existing under the laws of the State of North Carolina, with a principal place of business located in Charlotte, North Carolina.

4. Upon information and belief, Defendant ECS Southeast, LLC f/k/a ECS Southeast, LLP ("ECS Southeast") is a limited liability company organized and existing under the laws of the State of Virginia, with a principal place of business located in Chantilly, Virginia. Further upon information and belief, and based upon a reasonable attempt to determine the identity(ies) of ECS Southeast's member(s), ECS Southeast's sole member is Engineering Consulting Services, Ltd., a corporate entity incorporated and existing under the laws of the State of Virginia, with a principal place of business located in Chantilly, Virginia

## JURISDICTION AND VENUE

5. This Court has jurisdiction over LandDesign and ECS Southeast (collectively, "Defendants") pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship between plaintiffs Clayco and Centene (collectively, "Plaintiffs") on the one hand, and Defendants on the other, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue in this district is proper pursuant to (a) 28 U.S.C. §§ 1391(b)(1) and 1391(d), in that LandDesign resides in this judicial district; and (b) 28 U.S.C. § 1391(b)(2), in that a substantial part of the events and/or omissions giving rise to this action occurred in this judicial district.

7. This action is being filed in accordance with all applicable statutes of limitation and/or repose.

8. Plaintiffs have met and otherwise fulfilled all conditions precedent to the filing of this action and the recovery of all claims, compensation, and relief alleged herein.

**GENERAL ALLEGATIONS**

9. The preceding paragraphs of this Complaint are realleged and incorporated herein by reference.

10. On or about September 11, 2020, Centene, as owner, and Clayco, as construction manager, entered into an AIA® Document A133™-2019 *Standard Form of Agreement Between Owner and Construction Manager as Constructor*, by which Clayco agreed to manage construction of the Centene East Coast Headquarters located at 2405 Governor Hunt Road in Charlotte, North Carolina (the "Project").

11. The scope of the Project included, without limitation, the construction of a 770,000-square-foot office building (the "Office Building"), an attached 2400-space parking garage (the "Parking Garage"), and an early childhood education center (the "Daycare Building") on an 80-acre campus.

12. The Daycare Building portion of the Project was designed and constructed on a 1.8 acres site situated atop a gabion retaining wall.

13. The 25,700-square-foot Daycare Building is a one-story, steel-framed and concrete wall-panel structure with a slab-on-grade floor supported on shallow foundations and grade beams that were constructed upon completion of predecessor backfilling, grading, and soil compaction activities.

14. On or about March 11, 2020, Centene entered into an AIA® Document B101™-2017 *Standard Form of Agreement Between Owner and Architect* with LandDesign, by which LandDesign agreed to perform certain master planning, grading and stormwater management, and civil design services in connection with the Project (the "Civil Design Contract").

15. Upon information and belief, LandDesign entered into a written agreement with ECS Southeast to perform the subsurface geotechnical investigation required by the Civil Design Contract.

16. Upon information and belief, on or about September 18, 2020, ECS Southeast provided LandDesign with a "Geotechnical Engineering Report" for the Project. Among other things, the Geotechnical Engineering Report recommended supporting the Daycare Building "on newly placed Structural Fill or undisturbed residual soil[.]" Additionally, the Geotechnical Engineering Report identified certain elastic silts, fat clays, sandy clays, and sandy silts (together, "Marginal Soils") in the footprint of the Office Building that ECS Southeast did not consider suitable as backfill behind the gabion retaining wall, recommending instead that "a suitable borrow source or processed crushed rock should be considered."

17. Despite the conclusions set forth in the Geotechnical Investigation Report, ECS Southeast, as LandDesign's geotechnical sub-consultant and authorized agent, subsequently recommended that soils excavated from the footprint of the Office Building could be utilized as structural fill behind the gabion retaining wall atop which the Daycare Building would be constructed. ECS Southeast provided this recommendation with no direction that Plaintiffs screen out and avoid placement of Marginal Soils during the excavation and backfilling processes.

18. In reliance upon ECS Southeast's recommendation, Centene authorized Clayco to utilize soils excavated from the footprint of the Office Building as structural fill behind the gabion retaining wall, and Clayco did utilize soils excavated from the footprint of the Office Building as structural fill behind the gabion retaining wall.

19. ECS Southeast, as LandDesign's geotechnical sub-consultant and agent, also advised Plaintiffs that it would be appropriate to prebuild the eastern portion of the Daycare

Building site with off-site excavated soils to preload or surcharge the eastern portion of the site in order to expedite the compaction of the backfill placed in that area.

20. In reliance upon ECS Southeast's recommendation, Centene authorized Clayco to pile excavated soils on the eastern portion of the Daycare Building site so as to preload and expedite compaction of the backfill placed in that area, and Clayco did preload the eastern portion of the Daycare Building site.

21. On or about September 23, 2020, Centene entered into a professional services agreement with ECS Southeast, by which ECS Southeast agreed to perform on-call construction materials testing services in connection with the Project (the "Construction Materials Testing Contract").

22. The scope of the Construction Materials Testing Contract included, without limitation, soil compaction testing at the location of the Daycare Building.

23. ECS Southeast conducted inadequate compaction testing in measuring the in-place dry density of the compacted soils at the location of Daycare Building in or around October 2020.

24. As set forth in the contemporaneous Field Reports authored by ECS Southeast, the "test results indicated that the compacted material, at the areas and elevations tested, met or exceeded the project requirements of 95 percent of the maximum dry density as obtained in our laboratory using the Standard Proctor Method (ASTM D-698)."

25. Centene authorized Clayco to proceed with foundation construction at the Daycare Building in or around November 2021 in reliance on the compaction testing performed by ECS Southeast, and Clayco proceeded with foundation construction at the Daycare Building, followed by construction of the structure itself.

26. Clayco poured the Daycare Building's slab-on-grade in or around March 2022.

27. On or about December 19, 2022, Clayco first observed distress in the Daycare Building's poured slab-on-grade. Specifically, a control joint in the concrete slab that Clayco had saw-cut to approximately one-eighth of an inch had widened to approximately one-quarter of an inch and was elevated approximately one-eighth of an inch across the control joint's 100-foot length.

28. Clayco observed no significant change to the control joint the next two months. At the end of February and the beginning of March 2023, however, Clayco began observing additional widening of the control joint on a week-by-week basis.

29. On or about March 9, 2023, Clayco put ECS Southeast on notice that a settlement issue had been observed at the Daycare Building.

30. Subsequent investigation of the slab movement at the Daycare Building has revealed that LandDesign and ECS Southeast failed to provide accurate geotechnical engineering advice, and that ECS Southeast failed to perform accurately the Construction Materials Testing Contract, in accordance with the applicable standards of care. Defendants' failures include, without limitation, the following:

    (a) Approving the use of soils excavated from the footprint of the Office Building as structural backfill behind the gabion retaining wall atop which the Daycare Building was constructed without requiring the screening out of Marginal Soils;

    (b) Approving the preloading of the eastern portion of the Daycare Building site without requiring similar preloading of the western portion of the Daycare Building site, resulting in uneven settlement of the backfill placed at the site;

(c) Utilizing incorrect standard proctor test values during the testing of the compacted soils behind the gabion retaining wall, which had the effect of overestimating the maximum dry density of the 192 soil samples taken at the site and underestimating the amount of compaction actually achieved; and

(d) Such other and further failures as may be proven at the trial of this action.

31. As a direct and proximate result of Defendants' failures to perform the Civil Design Contract and the Construction Materials Testing Contract in accordance with the applicable standards of care, the backfill placed behind the gabion retaining wall atop which the Daycare Building was constructed is insufficient to bear the load generated by the structure.

32. The insufficiency of the fill material upon which the Daycare Building was constructed caused movement and settlement of the Daycare Building, threatens further movement and settlement, and has caused damage to the Daycare Building.

33. Clayco is in the process of remediating the defective conditions resulting from the movement and settlement of the Daycare Building.

34. The scope of Clayco's remedial work includes, without limitation, drilling of micropiles under the Daycare Building to arrest the settlement of and stabilize the structure, pouring back and reinforcing the Daycare Building's concrete slab, repairs to the perimeter doors and windows, and the performance of certain plumbing repairs.

35. The total anticipated cost of the remediation work Clayco is performing currently is $2,828,990.75 (the "Anticipated Remediation Cost").

36. Based on their failure to perform the Civil Design Contract and the Construction Materials Testing Contract in accordance with the applicable standards of care, Defendants are responsible for at least fifty percent (50%) of the actual remediation costs incurred.

37. Presuming actual remedial costs equal or exceed the Anticipate Remediation Cost, Defendants are responsible for not less than $1,414,495.37 of the actual remediation costs incurred.

38. On or about January 30, 2024, Centene assigned its rights under the Construction Materials Testing Contract to Clayco.

39. On or about April 2, 2024 Clayco and Centene agreed to a cost-sharing arrangement concerning payment to three primary subcontractors necessary for performing the remediation work described in this Complaint.

40. On or about July 9, 2024, Clayco assigned to Centene a chose in action in the Construction Materials Testing Contract to the extent of the funds expended by Centene pursuant to Plaintiffs' April 2, 2024 cost-sharing agreement.

## FIRST CLAIM FOR RELIEF
**(Centene's Claim for Breach of Contract Against LandDesign)**

41. The preceding paragraphs of this Complaint are realleged and incorporated herein by reference.

42. The Civil Design Contract is a valid, binding agreement, supported by adequate consideration, pursuant to which LandDesign agreed to perform certain civil engineering services, including, without limitation, geotechnical investigation services, for the Project.

43. In performing its obligations under the Civil Design Contract, LandDesign was required to exercise reasonable care in providing geotechnical advice with respect to the Project's Daycare Building.

44. LandDesign, through its own acts and omissions and/or through the acts and omissions of its geotechnical consultant and agent, ECS Southeast, failed to exercise reasonable care in providing geotechnical advice to Centene with respect to the Project's Daycare Building by, among other things, approving the use of soils excavated from the footprint of the Office Building as structural backfill behind the gabion retaining wall atop which the Daycare Building was constructed without requiring the screening out of Marginal Soils and approving the preloading of the eastern portion of the Daycare Building site without requiring similar preloading of the western portion of the Daycare Building site, resulting in uneven settlement of the backfill.

45. LandDesign's failure to exercise reasonable care in providing geotechnical advice with respect to the Project's Daycare Building induced Plaintiffs to proceed with placement of Marginal Soils beneath the Daycare Building and preloading of the eastern portion of the Daycare Building site, resulting in significant movement and settlement of the Daycare Building's slab-on-grade that Plaintiffs are currently remediating.

46. As a direct and proximate result of LandDesign's material breach of the Civil Design Contract, Centene has suffered and will continue suffer damage, including, without limitation, costs to investigate the movement and settlement of the Daycare Building's slab-on-grade, costs to arrest the settlement and repair defective conditions arising from same, and other damages totaling not less than $1,414,495.37, plus interest, costs, and attorneys' fees as permitted by appliable law and by the terms of the Civil Design Contract.

WHEREFORE, Centene prays as follows:.

(1) That it has and recovers a monetary judgment against LandDesign in an amount not less than $1,414,495.37 to be proven at trial;

(2) That the costs of this action, including, without limitation, attorneys' fees, be taxed against LandDesign; and

(3) That Centene be granted such other and further relief as this Court may deem just and proper.

## SECOND CLAIM FOR RELIEF
**(Plaintiffs' Claim for Breach of Contract Against Defendants)**

47. The preceding paragraphs of this Complaint are realleged and incorporated herein by reference.

48. The Construction Materials Testing Contract is a valid, binding agreement, supported by adequate consideration, pursuant to which ECS Southeast agreed to provide construction materials testing services for the Project.

49. In performing its obligations under the Construction Materials Testing Contract, ECS Southeast was required to exercise reasonable care in conducting compaction testing of the fill at the location of the Project's Daycare Building.

50. ECS Southeast failed to exercise reasonable care in its performance of the compaction testing of the fill located at the Daycare Building by, among other things, utilizing incorrect proctor test values during the testing of the compacted soils behind the gabion retaining wall.

51. ECS Southeast's failure to exercise reasonable care in its performance of compaction testing of the fill located at the Daycare Building induced Plaintiffs to proceed with construction of the structure on insufficiently compacted fill material, resulting in significant movement and settlement of the Daycare Building's slab-on-grade that Plaintiffs are currently remediating.

52. As a direct and proximate result of ECS Southeast's material breach of the Construction Materials Testing Contract, Plaintiffs have suffered and will continue suffer damage, including, without limitation, costs to investigate the movement and settlement of the Daycare Building's slab-on-grade, costs to arrest the settlement and repair defective conditions arising from same, and other damages totaling not less than $1,414,495.37, plus interest, costs, and attorneys' fees as permitted by appliable law and by the terms of the Construction Materials Testing Contract.

WHEREFORE, Plaintiffs pray as follows:.

(1) That they have and recover a monetary Judgment against ECS Southeast in an amount not less than $1,414,495.37 to be proven at trial;

(2) That the costs of this action, including, without limitation, attorneys' fees, be taxed against ECS Southeast; and

(3) That Plaintiffs be granted such other and further relief as this Court may deem just and proper.

This the 19th day of September 2024.

**POYNER SPRUILL LLP**

By: s/ Matthew C. Bouchard
Matthew C. Bouchard
N.C. State Bar No. 35995
mbouchard@poynerspruill.com
P.O. Box 1801 (27602-1801)
301 Fayetteville St., Suite 1900
Raleigh, NC 27601
Telephone: 919-783-2887
Facsimile: 919-783-1075

By: s/ Jamie D. Blue
Jamie D. Blue
N.C. State Bar No. 59918
jblue@poynerspruill.com
P.O. Box 1801 (27602-1801)
301 Fayetteville St., Suite 1900
Raleigh, NC 27601
Telephone: 919-783-2887
Facsimile: 919-783-1075
*Counsel for Plaintiffs Centene Management Company LLC and Clayco, Inc.*